# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**DEERICA WATSON**                                                                    **PLAINTIFF**

**V.**                 **CASE NO. 4:22-CV-00703 BRW-JTK**

**SOCIAL SECURITY ADMINISTRATION**                     **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.**   **Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**II.**   **Introduction:**

Plaintiff, DeErica Watson ("Watson"), filed applications for disability benefits and supplemental security income on November 4, 2019. (Tr. at 19). In the applications, she alleged that her disability began on March 27, 2014. *Id*. The applications were denied initially and upon reconsideration. After conducting a

hearing, an Administrative Law Judge ("ALJ") denied Watson's claim on April 26, 2021. (Tr. at 19-29). The Appeals Council denied Watson's request for review of the hearing decision. (Tr. at 7-11). The ALJ's decision now stands as the final decision of the Commissioner, and Watson has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

**III.    The Commissioner's Decision:**

The ALJ found that Watson had not engaged in substantial gainful activity since the alleged onset date of March 27, 2014.[1] (Tr. at 21). The ALJ found, at Step Two, that Watson has the following severe impairments: obesity, eczema, and dermatitis. (Tr. at 22).

At Step Three, the ALJ determined that Watson's impairments did not meet or equal a listed impairment. (Tr. at 22). Before proceeding to Step Four, the ALJ determined that Watson had the residual functional capacity ("RFC") to perform work at all exertional levels, except that she could not be exposed to extreme changes in temperature or humidity. (Tr. at 22-23).

At Step Four, the ALJ found that Watson was unable to perform any past

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

relevant work. (Tr. at 27). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that that, based on Watson's age, education, work experience, and RFC, there were jobs in the national economy that she could perform, such as housekeeper and price tag ticketer. (Tr. at 28-29). Therefore, the ALJ found that Watson was not disabled. *Id*.

## IV. <u>Discussion</u>:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of

administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Watson's Arguments on Appeal

Watson, who appears *pro se* in this matter, generally contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ did not fully develop the record; (2) the ALJ did not support his decision with medical opinions; (3) the RFC did not fully incorporate Watson's limitations; (4) the ALJ erred at Step Three; and (4) the ALJ did not properly evaluate Watson's subjective complaints.

Watson suffered from dermatitis, eczema, and skin lesions. She did require treatment (in a conservative manner), but many months to a year passed in between each visit to her doctor. (Tr. at 23-25, 425-430, 441-446, 518-539). Clinical examinations were overall grossly normal. *Id*. Although Watson testified that medication did not help her conditions, in medical records she stated that steroids helped and that her skin problems diminished when she stopped working at a hair salon.[2] (Tr. at 465-466). At the time of the hearing, Watson was only using topical creams to treat her conditions. (Tr. at 23, 139).

Moreover, she did not follow up with an immunologist as her PCP recommended.[3] (Tr. at 25, 468). Finally, Watson said she was able to perform a wide variety of daily activities, including bathing her children, cooking, cleaning, washing laundry, doing errands, and shopping. (Tr. at 24, 333-350). She also said she regularly took her children to the park, walked fairly far, exercised, and spent time with others.[4] *Id*.

Watson claims that the ALJ did not support his decision with medical

---

[2] Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[3] A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

[4] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

opinions, and should have further developed the record by obtaining supplemental medical opinions. The ALJ *did* address the two DDS ("Disability Determination Services") medical opinions. (Tr. at 26). The first DDS medical expert reviewed the records and found no severe impairments. *Id.* The second DDS medical expert found severe impairments of dermatitis and obesity, and suggest that Watson be limited to light work with environmental hazard restrictions. *Id*. The ALJ explained that he found these opinions partially persuasive. *Id*. Based on the balance of the medical record, consideration of these opinions, and Watson's testimony, the ALJ assigned an RFC for work at all exertional levels with no exposure to extreme changes in temperature or humidity.[5] (Tr. at 21-22). This RFC accounted for infrequent and conservative treatment, positive response to treatment and lifestyle modification, and Watson's ability to perform daily activities. The RFC incorporated all of Watson's limitations.

There is no requirement that the ALJ rely on any particular medical opinion, and he only needs to obtain supplemental opinions if there is a crucial undeveloped issue.[6] *Harvey v. Colvin*, 839 F.3d 714 (8th Cir. 2016). The record was not in

---

[5] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

[6] An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28

conflict, and doctors' notes described mild to moderate conditions, at most. The record was fully developed.

Watson's argument that she met a Listing at Step Three fails. She argues that her rashes on her hands lasted at least three months, which is required by Listing 8.05 (in addition to other symptoms), but corresponding records show that her lesions cleared up in two weeks after she stopped working at a hair salon. (Tr. at 25, 465-466); Adult Listing of Impairments, § 8.05, Dermatitis. It is the claimant's burden to show that she met ALL the requirements of a Listing.[7] Watson has not carried that burden.

Finally, Watson's argues that the ALJ did not fully consider her subjective complaints.[8] In fact, the ALJ addressed the medical evidence, the nature of

---

F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant and the ALJ's duty to develop is not never-ending. *Id*.; *McCoy, supra,* 648 F.3d at 612. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011).

[7] At Step Three, the burden rests squarely on the claimant to prove she met a Listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). The claimant must show that her impairment matches all of the specified medical criteria of a Listing. *Johnston v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

[8] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir.

Watson's pain, her response to treatment, and her ability to perform daily activities. (Tr. at 23-27). He explained that given these factors, her complaints were inconsistent with the record evidence. (Tr. at 26). He fulfilled his duty in this respect.

## V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The record was fully developed, the ALJ properly considered medical opinions, the RFC incorporated all of Watson's limitations, the ALJ did not err at Step Three, and he considered Watson's subjective complaints. The finding that Watson was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 8th day of June, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).